**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **IN RE:  TLI COMMUNICATIONS LLC PATENT LITIGATION** | **MDL No.  1:14md2534** |
| This document relates to ALL member cases | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CONSOLIDATED**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**Table of Contents**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND FACTS ...................................................................................... 4

    A.    The Purported Invention of the '295 Patent............................................. 4

    B.    The Patent Office Concluded That the Means-Plus-Function Limitations
        Are Indefinite ......................................................................................... 8

III.   LEGAL STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)............. 10

IV.    THE '295 PATENT SYSTEM AND APPARATUS CLAIMS ARE INVALID
     AS INDEFINITE ................................................................................................ 11

    A.    Legal Standard for Invalidity for Indefiniteness Under 35 U.S.C. § 112 ............ 11

    B.    "Means For Allocating Classification Information" and "Means … To
        Allocate the Classification Information" Are Indisputably Means-Plus-
        Function Limitations ............................................................................. 13

    C.    The Specification Does Not Disclose Sufficient Structure for Performing
        the Function of the "Allocating Classification Information" Means................... 14

    D.    Because Claims 1 and 25 Are Invalid as Indefinite, Their Dependent
        Claims 2-16 and 26 Are Likewise Invalid as Indefinite ..................................... 16

V.     THE '295 PATENT METHOD CLAIMS ARE INVALID FOR LACK OF
     PATENTABLE SUBJECT MATTER ........................................................................ 16

    A.    Legal Standard for Invalidity for Lack of Patentable Subject Matter Under
        35 U.S.C. § 101...................................................................................... 17

    B.    Claim 17 Covers an Abstract Idea for Organizing Stored Digital Images .......... 19

    C.    Claim 17 Does Not Contain an "Inventive Concept" Sufficient To
        Transform an Abstract Idea for Organization Into a Patent-Eligible
        Invention .............................................................................................. 22

        1.    Claim 17 Recites Mere Application of the Abstract Idea Using
            Known, Generic Components............................................................ 22

        2.    The Dependent Claims Fail To Supply an "Inventive Concept."............ 25

            a.    Use of audio data as classification information (claims 18-
                20) ........................................................................................ 25

            b.    Use of time, telephone number, text, or storage location as
                classification information (claims 21-24) ................................... 26

    D.    The System and Apparatus Claims Are Likewise Unpatentable ........................ 27

VI.    TLI'S INADEQUATELY PLED JOINT INFRINGEMENT ALLEGATIONS
     SHOULD BE DISMISSED .................................................................................... 27

VII.   TLI'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED................ 32

    A.    TLI Does Not Plead Specific Intent to Induce Infringement................................ 32

    B.    TLI Fails To Plead Contributory Infringement Because It Does Not Allege
        No Substantial Non-infringing Uses of the Accused Products............................ 33

**Table of Contents**
(continued)

C.    TLI Fails To Plead Indirect Infringement of the Method Claims Because It Does Not Allege a Single Direct Infringer ........................................................... 34

D.    TLI's Indirect Infringement Claims Should Be Dismissed to the Extent They Are Based on Pre-Suit Knowledge ............................................................. 37

VIII.    TLI'S ADDITIONAL DEFICIENT CLAIMS SHOULD BE DISMISSED .................. 38

A.    TLI's Claims of Direct Infringement of the System and Apparatus Claims by the Platform Defendants Should be Dismissed ................................................ 38

1.    TLI Cannot Sustain Claims Against the Platform Defendants For Providing Only Two of the Three Main Required System Components ....................................................................................... 38

2.    TLI Cannot Sustain Claims Against the Platform Defendants for Putting the Claimed Systems "Into Service" by Providing Users with Mobile Phones and/or Software ....................................................... 40

B.    TLI's Claim Under 35 U.S.C. § 271(f) Should Be Dismissed ............................ 42

C.    TLI's Request for Enhanced Damages Should Be Dismissed ............................. 43

IX.    CONCLUSION ............................................................................................................ 44

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...................................................................... 27

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    629 F.3d 1311 (Fed. Cir. 2010)...................................................................... 29

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    No. 09-1372 (Fed. Cir.).......................................................................... 28, 29

*Akamai Techs., Inc. v. MIT*,
    419 F. Appx 989 (Fed. Cir. 2011).................................................................. 29

*Alice Corp. v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ......................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    No. 10-cv-00910-LBM-TRJ (E.D. Va. Oct. 24, 2014)............................... 22, 26

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) ..................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 10, 33, 43

*Augme Techs., Inc. v. Yahoo! Inc.*,
    755 F.3d 1326 (Fed. Cir. 2014)...................................................................... 13

*Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*,
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................... 17

*Beatrice Foods Co. v. New England Printing & Lithographing Co.*,
    923 F.2d 1576 (Fed. Cir. 1991)................................................................. 43, 44

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................... 10, 11, 43

*Bilski v. Kappos*,
    561 U.S. 593 (2010)........................................................................... passim

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009)................................................................ 13, 16

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)................................................................ 28, 40

*Bosiger v. U.S. Airways*,
    510 F.3d 442 (4th Cir. 2007) ...................................................................... 11

*Bradford v. HSBC Mortg. Corp.*,

829 F. Supp. 2d 340 (E.D. Va. 2011) ........................................................................ 11

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009)................................................................................. 43

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011)..........................................................................passim

*Cogent Med., Inc. v. John Wiley & Sons, Inc.*,
   Case No. 5:13-cv-4486-RMW (N.D. Cal. Sept. 30, 2014) ....................................... 18, 25

*Compression Tech. Solutions LLC v. EMC Corp.*,
   No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29,
   2013) ................................................................................................................... 18

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
   558 F.App'x 988 (Fed. Cir. 2014) ................................................................... 20, 21, 23

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)................................................................................ 25

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005)........................................................................... 12, 16

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)........................................................................... 12, 22

*Diamond v. Diehr*,
   450 U.S. 175 (1981)............................................................................................... 23

*DietGoal Innovations LLC v. Bravo Media, LLC*,
   No. 13-cv-8391-PAE, 2014 U.S. Dist. LEXIS 92484 (S.D.N.Y. July
   8, 2014) ....................................................................................................... 18, 24, 27

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014)........................................................................... 17, 20

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)................................................................................ 35

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004)................................................................................ 35

*Eclipse IP LLC v. McKinley Equip. Corp.*,
   Case No. 14-cv-154-GW-AJWX, 2014 WL 4407592 (C.D. Cal.
   Sept. 4, 2014) ....................................................................................................... 17

*Enfish, LLC v. Microsoft Corp.*,
   No. 12-cv-07360-MRP-MRW (C.D. Cal. Nov. 3, 2014) ............................................. 21

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012)........................................................................ 13, 15, 16

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,

673 F. 3d 1361 (Fed. Cir. 2012).................................................................................. 13

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014) ............................... 25

*Finisar Corp. v. DirecTV Group, Inc.*,
523 F.3d 1323 (Fed. Cir. 2008)...................................................................... 13

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ........................................................................ 10

*Function Media, LLC v. Google, Inc.*,
708 F. 3d 1310 (Fed. Cir. 2013)..................................................................... 13

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
304 U.S. 364 (1938)....................................................................................... 12

*Genetic Techs. Ltd. v. Lab. Corp. of AmericaHoldings*,
Case No. 12-cv-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3,
2014) ............................................................................................................. 17

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011) ............................................................................ 32, 37

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004)........................................................................ 9

*Grecia v. Vudu, Inc.*,
No. C-14-1220 EMC, 2014 WL 4348294 (N.D. Cal. Aug. 29, 2014)............................ 35

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005)...................................................................... 13

*I/P Engine, Inc. v. AOL Inc.*,
576 F.App'x 982 (Fed. Cir. 2014) .................................................................. 17

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
732 F.3d 1376 (Fed. Cir. 2013)...................................................................... 13

*In re Aoyama*,
656 F.3d 1293 (Fed. Cir. 2011)...................................................................... 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)...................................................................... 33

*In re Donaldson Co.*,
16 F.3d 1189 (Fed. Cir. 1994)........................................................................ 14

*In re Packard*,
751 F.3d 1307 (Fed. Cir. 2014)...................................................................... 12

*In re Roslin Inst. (Edinburgh)*,
750 F.3d 1333 (Fed. Cir. 2014)...................................................................... 17

*Kinetic Concepts, Inc., v. Blue Sky Med. Grp., Inc.,*
   554 F.3d 1010 (Fed. Cir. 2009)................................................................. 12

*Klar v. Fannie Mae,*
   No. 3:13-cv-00462-JAG, 2014 U.S. Dist. LEXIS 13166 (E.D. Va.
   Jan. 31, 2014)........................................................................................... 11

*Le Roy v. Tatham,*
   55 U.S. 156 (1852)................................................................................... 19

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
   134 S. Ct. 2111 (2014)........................................................................ 28, 35

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012)................................................................. 19, 23, 24

*McRO, Inc. v. Activision Publishing, Inc.,*
   Case No. 2:14-cv-33-GW-FFM, 2014 WL 4759953 (C.D. Cal. Sept.
   22, 2014) .................................................................... 18, 23, 24, 25

*Moore v. Flagstar Bank,*
   6 F. Supp. 2d 496 (E.D. Va. 1997) ......................................................... 11

*Move, Inc. v. Real Estate Alliance Ltd.,*
   709 F.3d 1117 (Fed. Cir. 2013)................................................................ 29

*Muniauction, Inc. v. Thomson Corp.,*
   532 F.3d 1318 (Fed. Cir. 2008)..................................................... 28, 29, 30

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
   134 S. Ct. 2120 (2014)......................................................................... 11, 12

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
   545 F.3d 1359 (Fed. Cir. 2008)........................................................... 13, 14

*Noah Sys. Inc., v. Intuit Inc.,*
   675 F.3d 1302 (Fed. Cir. 2012)................................................................ 13

*Open Text S.A. v. Alfresco Software Ltd,*
   13-CV-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ................ 23

*Optigen, LLC v. Int'l Genetics, Inc.,*
   777 F. Supp. 2d 390 (S.D.N.Y. 2011)...................................................... 35

*Planet Bingo LLC v. VKGS LLC,*
   576 F.App'x 1005 (Fed. Cir. 2014) ......................................................... 25

*Rembrandt Social Media, LP v. Facebook, Inc.,*
   950 F. Supp. 2d 876 (E.D. Va. 2013) .............................................. passim

*Robert Bosch, LLC v. Snap-On Inc.,*
   --- F.3d ----, 2014 WL 5137569 (Fed. Cir. Oct. 14, 2014) ...................... 13

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.,*

957 F. Supp. 2d 1189 (S.D. Cal. 2013) ..................................................... 32, 34

*Silver State Intellectual Techs., Inc. v. Foursquare Labs, Inc.*,
No. 12-CV-1308, 2013 WL 5437363 (D. Nev. Sept. 26, 2013) ..................................... 32

*Smartwater, Ltd. v. Applied DNA Scis., Inc.*,
No. 12-CV-5731, 2013 WL 5440599 (E.D.N.Y. Sept. 27, 2013) .................................. 34

*Tapia v. US Bank, N.A.*,
718 F. Supp. 2d 689 (E.D. Va. 2010) .............................................................. 8

*Tecsec, Inc. v. Int'l Bus. Machs. Corp.*,
769 F. Supp. 2d 997 (E.D. Va. 2011) ...................................................... 31, 41

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007) ........................................................................ 8

*Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*,
753 F.3d 1375 (Fed. Cir. 2014) ............................................................... 12

*TSI (USA) Inc. v. Creative Compounds, LLC*,
No. 1:14-CV-0017 CEJ, 2014 WL 5419579 (E.D. Mo. Oct. 22,
2014) (same) .................................................................................. 35

*Unisone Strategic IP, Inc. v. Life Techs.*,
No. 13-CV-1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013) ............................... 32, 34

*United Carbon Co. v. Binney & Smith Co.*,
317 U.S. 228 (1942) ........................................................................... 12

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) ............................................................... 37

*W.L. Gore & Assocs. v. Medtronic, Inc.*,
874 F. Supp. 2d 526 (E.D. Va. 2012) .................................................. 29, 30, 31

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) ................................................................. 10

*Warner-Lambert Co. v. Apotex. Corp.*,
316 F.3d 1348 (Fed. Cir. 2003) ............................................................... 33

*Wolf v. Capstone Photography, Inc.*,
No. 2:13-cv-09573-CAS-PJW (C.D. Cal. Oct. 28, 2014) .................................. 21, 23, 26

*Zoltek Corp. v. United States*,
672 F.3d 1309 (Fed. Cir. 2012) ............................................................... 43

## **STATUTES**

35 U.S.C. § 101 .......................................................................... passim

35 U.S.C. § 102 ............................................................................. 10

35 U.S.C. § 103 ................................................................................................ 10

35 U.S.C. § 112 ......................................................................................... passim

35 U.S.C. § 112(b) ............................................................................................ 11

35 U.S.C. § 112(f) ................................................................................... 2, 8, 12

35 U.S.C. § 271(b) ........................................................................................... 32

35 U.S.C. § 271(c) ................................................................................ 32, 34, 37

35 U.S.C. § 271(f) .................................................................................... 42, 43

35 U.S.C. § 284 .............................................................................................. 43

35 U.S.C. § 311(c) ........................................................................................... 10

## OTHER AUTHORITIES

5A Charles A. Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1357 (1990) ................................................ 11

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 10

Fed. R. Evid. 201(b) ......................................................................................... 8

Pursuant to the Court's order during the October 16, 2014 status conference, Defendants respectfully submit this joint consolidated brief in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because all claims of asserted U.S. Patent No. 6,038,295 ("the '295 patent") are invalid under 35 U.S.C. §§ 101 and/or 112 and, in addition, many of TLI's claims are defectively pled.[1]

## I.   INTRODUCTION

The '295 patent specification describes the use of generic components to record, store, and transmit digital images from a telephone unit to a server.  As the patentee acknowledged, however, many technologies for performing these tasks existed in the prior art.  To attempt to distinguish its alleged invention over the prior art, the patentee described a way to store digital images based on "classification information" input by the user.  The asserted claims suffer from a catalog of infirmities that warrant dismissal of this case pursuant to 35 U.S.C. §§ 112 and 101.

*First*, the system and apparatus claims (claims 1 and 25) are invalid as indefinite.  The patentee attempted to claim the "classification information" feature using means-plus-function language.  Specifically, claim 1 recites a system "for recording and administering digital images" that includes "means for allocating classification information prescribed by a user."  Claim 25 similarly recites "a digital image recording and administering apparatus" that includes a "classification information unit" with "means to receive audio information from the user … and to allocate the classification information to the corresponding digital still image data."

---

[1] By submission of this Joint Consolidated Motion, and also pursuant to the Court's direction during the October 16, 2014 status conference, Defendants Facebook, Inc., Instagram, LLC, SmugMug, Inc., Photobucket.com, Inc., Google Inc., and Apple Inc. hereby confirm withdrawal of their pending motions to dismiss.  (*See* Case No. 14-cv-142, D.I. 47 (Facebook and Instagram Motion to Dismiss); Case No. 14-cv-789, D.I. 12 (Smugmug Motion to Dismiss); Case No. 14-cv-787, D.I. 13 (Photobucket Motion to Dismiss); Case No. 14-cv-139, D.I. 18 (Google Motion to Dismiss); Case No. 14-cv-136, D.I. 19 (Apple Motion to Dismiss).)

Federal Circuit law is clear that the patentee, having chosen to utilize means-plus-function language, must in exchange describe a corresponding structure in the specification that carries out the recited function of allocating user-provided classification information to the digital images. *See* 35 U.S.C. § 112(f) (formerly 35 U.S.C. § 112, ¶ 6). The '295 patent discloses no such structure. Indeed, the Patent Office observed precisely this lack of disclosure in its written decision on an *inter partes* review petition for the '295 patent, stating that the specification discloses no structure capable of performing the "means for allocating classification information" limitation. The Patent Office's reasoning comports with well-established Federal Circuit law and should be adopted by this Court. Because the '295 patent fails to describe such a structure, independent claims 1 and 25 (and all claims depending from them) are indefinite and therefore invalid as a matter of law.

*Second*, the '295 patent claims are invalid pursuant to the Supreme Court's recent decision in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347, 2354 (2014), because they purport to claim an abstract idea for organizing digital images. As the Court emphasized, "the primary object of the patent laws" is to "promote," "not inhibit further discovery." *Id.* at 2355. To this end, *Alice* made clear that claims directed to "abstract ideas" are invalid under 35 U.S.C. § 101 unless they contain an "inventive concept" that "transforms" the abstract idea into something patentable. *Id.* The Court further held that simply implementing an abstract idea on generic computer equipment provides no basis for patentability. *Id.* at 2357.

The '295 patent purports to claim an abstract idea implemented on generic computer equipment. The steps of independent method claim 17 require (1) recording and storing digital images using a telephone device, (2) transmitting the images and user-prescribed information that "classifies" those digital images to a server, and (3) storing the images in the server based on

2

that classification information.  This process generally could be implemented without a computer at all:

- Jane could take and store photos using a camera phone;

- Jane could print the images and write on one photo that it was from a summer vacation and on another that it was from a spring break vacation;

- Jane could mail the photos with the written classification information to Bob; and

- Bob could use the classification information to store the summer and spring break vacation photos in different sections of a photo album.

Claim 17 modifies this manual process merely by carrying out the organization using a generic technical environment: rather than sending a photo print, Jane sends a "digital image" from the camera phone to a "server," which stores the photo in the server based on the classification information.  In this claim, the camera phone and server are merely generic computer equipment known in the prior art.  Without such equipment, all that remains is the unpatentable idea of organizing and classifying photos.  This is clearly an abstract idea, familiar to anyone who has ever organized photos in a physical photo album, and therefore not a process that a patentee can lawfully monopolize.  Furthermore, the system and apparatus claims also lack patentable subject matter because they merely link use of the method to a particular electronic environment.

*Third*, if the Court declines to rule now that the asserted claims are invalid under Sections 112 and/or 101, then the Court should proceed to scrutinize the allegations of infringement made in TLI's Complaints.  As explained in detail below, Plaintiff's infringement allegations are deficient for numerous reasons and therefore warrant dismissal under Rule 12(b)(6), even if the asserted claims are not held invalid at this time.

For these reasons, Defendants respectfully ask this Court to dismiss TLI's claims pursuant to Rule 12(b)(6) because all asserted claims are invalid and because certain of TLI's claims are defectively pled, as detailed below.

## II.   BACKGROUND FACTS

### A.   The Purported Invention of the '295 Patent

1.   The '295 patent describes a "method for recording, communicating and administering [a] digital image." (*See* Case No. 14-cv-00142, D.I. 1-1, '295 patent, col. 1:11-12.)  The embodiment described in the '295 patent, which is also reflected in the claims, includes: (1) a "telephone unit" for capturing, recording, and transmitting images and associated "classification information" prescribed by a user; (2) a "server" for receiving images transmitted by the telephone unit and storing them based on the "classification information;" and (3) a "transmission system" that facilitates communication between the telephone unit and the server. (*Id.*, cols. 4:61-67, 7:56-8:5; Fig. 1.)

2.   The specification of the '295 patent acknowledges that the components of this three-part system were well-known in the art.  The "Description of the Related Art" discloses numerous known technologies for capturing, transmitting, and storing digital images with a digital image pick-up unit.  These prior-art technologies include "[d]igital image cameras" such as "a digital photo camera of the type which is known," (*id.* at cols. 1:27-59, 5:63-6:2); a "cordless," "mobile," or "normal" telephone that is capable of "image transmission" and which contains, or is connected to, a "digital image pick up unit," (*id.* at col. 2:8); and "video conference systems [] used to transmit spoken data in combination with image data." (*Id.* at col. 1:19-21.)  The written description also discloses a known "arrangement with a television camera and a telephone which provides for audio data and image data to be transmitted in common through a telephone line," which "makes it possible to digitize, compress and transmit individual

still pictures, such as photographs." (*Id.* at col. 1:39-41.)  Thus, the patent concedes that sending digital pictures to a remote location for storage was not an innovative concept.

3.      The '295 patent also acknowledges that the ability to store a large number of digital images in a database in a "central computer unit" was known.  (*Id.*, col. 1:43-45.)  The specification explains, however, that "the organization of the data of the data base becomes a problem," and that "the problems of locating the data of an image data file increase as the number of images to be archived increases."  (*Id.*, col. 1:43-48.)  It is in this narrow area – organizing the storage of digital images on a server – that the '295 patent purports to make an alleged improvement.

4.      The specification describes a way of ***organizing*** the digital images to be stored on the server, "which is simple, fast and surveyable so that the digital images may be archived."  (*Id.* at col. 2:3-4.)  After a digital image is captured, "***classification information***" pertaining to that specific image is input by the user.  The "classification information" may comprise user-entered text, "an arbitrary form of audio data" such as "songs, noises, or speech," time of day, date, telephone number, or a path indication as to where the image should be stored on the server.  (*Id.* at cols. 7:20-44; 6:58-61 ("The following classification information OM is not intended to be all inclusive but only as examples …."; Fig. 4.)

5.      The telephone unit then "allocates" the classification information to the image and transmits the image and classification information to the server.  This feature is claimed with the "means-plus-function" limitations recited in the system claims (independent claim 1 and its dependent claims 2-16) and apparatus claims (claim 25 and its dependent claim 26).  For example, the "telephone unit" of claim 1 includes a "<u>means for allocating classification information</u> prescribed by a user of said at least one telephone unit <u>to characterize digital images</u>

obtained by said digital pick up unit."  Independent claim 25 includes substantially the same requirement by reciting a classification information unit that includes "<u>means</u> to receive audio information from the user as the classification information and <u>to allocate the classification information to the corresponding digital still image data</u> …."

6.      In addition to the system and apparatus claims, the '295 patent includes method claims that cover capture, transmission, and storage of digital images based on user-prescribed classification information.[2]  Independent claim 17 recites:

> 17. A method for recording and administering digital images, comprising the steps of:
>
> recording images using a digital pick up unit in a telephone unit,
> storing the images recorded by the digital pick up unit in a digital form as digital images,
> transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,
> receiving the data by the server,
> extracting classification information which characterizes the digital images from the received data, and
> storing the digital images in the server, said step of storing taking into consideration the classification information.

7.      After receiving the image files and classification information transmitted from the telephone unit, the server uses the classification information "for archiving the images in the server memory."  (*See id.* at cols. 7:52-55; 2:58-59.)  The "server" is "a computer system which serves for organizing a database which includes a large number of digital images as well as classification information …."  (*Id.* at col. 5:1-3.)  The claims provide that storage of digital images "tak[e] into consideration" the classification information.  (*See id.*, claims 1, 17.)

---

[2] TLI asserts all of claims 1-26 against one or more of the Defendants.  (*See* Case No. 14-md-2534, D.I. 40.)

8.     As discussed above and shown in the annotated Figure 3 below, the specification discloses prior art capable of performing all steps of the claimed method except for potentially the last step, "storing the digital images … taking into consideration the classification information."



**FIG. 3**

301 — RECORD AN IMAGE

Col. 1:27-30:  "Digital image cameras are currently available on the market, as known, for example … Canon: Powershot 600 …."

302 — STORE IMAGE AS DIGITAL FORM

Col. 1:36-42:  "An arrangement with a television camera and a telephone which provides for audio data and image data to be transmitted in a common through a telephone line is known, for example, U.S. Patent No. 5,260,989 … [t]he disclosed apparatus makes it possible to digitize, compress and transmit individual still pictures, such as photographs."

Col. 1:31-42: "cellular telephones may be utilized for image transmission, as is known, for example, from the U.S. Pat. No. 5,260,989 …."

303 — TRANSMIT DATA CONTAINING DIGITAL IMAGE TO SERVER VIA TRANSMITSSION UNIT

Col. 1:20-26:  "Video conferencing systems are used to transmit spoken data in combination with image data and/or written character data.  These systems … [include a] computer with an external video camera at both the sender end as well as at the receiver end."

304 — RECEIVE DATA

Col. 1:52-59: "An image and audio communication system having a graphical annotation capability is disclosed in … EP 0 64 968 A2 in which voice, data and image communications are used in telephone systems … still pictures and/or moving pictures can be recorded during a voice and data communication on a picture screen of a PC [ ] in parallel to the data displayed on the screen."

305 — EXTRACT CLASSIFICATION INFORMATION FROM RECEIVED DATA

Col. 7:45-51:  "analysis unit AE is fashioned so that it may extract the classification information OM from the data received by the server … [v]arious realizations of the analysis unit AE may be utilized including in a type of parser with which the respective information is extracted.  A parser may be of the type which is known."

306 - STORE DIGITAL IMAGE TAKING INTO CONSIDERATION THE CLASSIFICATION INFORMATION

### B.  The Patent Office Concluded That the Means-Plus-Function Limitations Are Indefinite.

9.  On April 1, 2014, defendant Facebook, Inc. filed a petition for *inter partes* review of claims 1, 2, 6-11, 14-17, and 21-24 of the '295 patent ("IPR Petition") with the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office.[3]  (Case No. 14-cv-00142, D.I. 4-3.)  On July 9, 2014, TLI filed a Patent Owner Preliminary Response to Facebook's IPR Petition ("Preliminary Response").  (Case No. 14-cv-00142, D.I. 4-4.)

10.  In their IPR submissions, both Facebook and TLI made claim construction arguments regarding the "means for allocating classification information" recited in claim 1. Facebook and TLI agreed that this is a means-plus-function limitation subject to the requirements of 35 U.S.C. § 112, ¶ 6 (now re-codified as 35 U.S.C. § 112(f)).  (Case No. 14-cv-00142, D.I. 4-3 at 13; D.I. 4-4 at 22, 24.)  Facebook and TLI also agreed that the function performed by this limitation is recited in the claim itself, *i.e.*, "allocating classification information prescribed by a user."  (*See id.*)  Facebook and TLI disagreed, however, on whether the specification sufficiently discloses a corresponding structure for the claimed function. Facebook argued that the specification does not disclose any structure or algorithm for performing allocation of classification information to the images as required by the claim.  (Case No. 14-cv-00142, D.I. 4-3 at 13-14; *see also* Morton Decl. Ex. A, ¶¶ 81, 84.)  TLI responded by arguing that "the corresponding structure for 'allocating classification information prescribed by

---

[3] Defendants request that the Court take judicial notice of Facebook and TLI's submissions during the IPR proceeding as well as the PTAB's Institution Decision pursuant to Federal Rule of Evidence 201(b) because these are public records "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b); *Tapia v. US Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (noting that a court may consider judicially noticed matters in deciding a Rule 12(b)(6) motion to dismiss (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007))).

a user' is at least the phone's keypad, controls, display, microphone and/or speech recognition unit." (Case No. 14-cv-00142, D.I. 4-4 at 24.)

11.     In its September 15, 2014 decision, the PTAB determined that "means for allocating classification information" is a means-plus-function limitation.  (Case No. 14-md-2534, D.I. 47-1 at 9.)  The PTAB also concluded that the function of the "means for allocating classification information" limitation is "allocating classification information."  (*Id.* at 10.)  The PTAB then looked to the specification in attempt to "identify the corresponding structure for that function."  (*Id.* at 9-12 (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1333-34 (Fed. Cir. 2004))), observing:

> Thus, the '295 patent identifies "a means MZ" in Figure 2 that "allocates classification information" and "may be integrated into the keypad," but does not describe *how* the classification information is allocated to the digital image.
>
> Other references to allocating classification information in the '295 patent also do not describe *how* the classification information is allocated to a digital image. For example, the '295 patent describes the user prescribing the classification information using a telephone unit, but does not describe that information subsequently being allocated to the digital image[.]

(*Id.* at 11 (emphasis in original).)  The PTAB went on to review other uses of "allocate" in the specification, and concluded that the specification fails to disclose a structure capable of performing the claimed "allocation of classification information" function:

> The patent merely uses the word "allocate," which may correspond to the function of the claimed "means for allocating," but does not serve to describe an algorithm by which the classification information are "allocated." Although the '295 patent describes the use of a keypad or speech recognition unit by a user to prescribe classification information, it does not go on to provide an algorithm that may correspond to the claimed function of "allocating classification information prescribed by a user … to characterize digital images."
>
> We find that the '295 patent does not describe an algorithm for "allocating classification information" as recited in claim 1.

(*Id.* at 12 (emphasis added).)

12.     As a result, the PTAB was "unable to arrive at an interpretation of the requirements of claim 1 due to the lack of disclosed structure corresponding to the 'means for allocating classification information' limitation." (*Id.* at 13.)  Accordingly, the PTAB concluded that claim 1 and its dependents are "indefinite, and thus not amenable to construction."  (*Id.*) Because the PTAB could not construe these claims, it declined to institute *inter partes* review of claim 1 and its dependents.  (*Id.*)[4]

### III.     LEGAL STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a 12(b)(6) motion, this Court: (1) accepts all of the complaint's well-pleaded facts as true, but not unwarranted factual inferences and legal conclusions, and then (2) determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has stated a plausible claim for relief.  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Iqbal*, 556 U.S. at 678 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)); *Twombly*, 550 U.S. at 570.  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A claim is plausible only if "the plaintiff pleads factual content that

---

[4]     The PTAB could not actually declare the claims invalid because *inter partes* review authorizes invalidity challenges based on prior art under 35 U.S.C. §§ 102 and 103, and not indefiniteness under 35 U.S.C. § 112.  *See* 35 U.S.C. § 311(c).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding Rule 12 motions, "the Court may consider the facts alleged on the face of the complaint, as well as 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *See Klar v. Fannie Mae*, No. 3:13-cv-00462-JAG, 2014 U.S. Dist. LEXIS 13166, at *6 (E.D. Va. Jan. 31, 2014) (quoting *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990))).

To the extent the Court deems it appropriate to consider matters outside the pleadings in deciding this Motion pursuant to Rule 12(b)(6), the Court may convert the Motion to a motion for summary judgment pursuant to Rule 12(d). *Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 351, n24 (E.D. Va. 2011) ("[I]t is well-settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment" "to assess whether genuine issues of material fact do indeed exist." (quoting *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007))).

## IV.    THE '295 PATENT SYSTEM AND APPARATUS CLAIMS ARE INVALID AS INDEFINITE

### A.    Legal Standard for Invalidity for Indefiniteness Under 35 U.S.C. § 112

The definiteness requirement is codified in Section 112(b) of the Patent Act, which states that a patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112(b). A claim that fails to comply with the definiteness requirement is invalid. *See, e.g., Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124-25 (2014). Because a ruling on indefiniteness is predicated on legal principles of claim construction, it presents a question of law

for the district court. *See In re Packard,* 751 F.3d 1307, 1311 (Fed. Cir. 2014) (quoting *Kinetic Concepts, Inc., v. Blue Sky Med. Grp., Inc.,* 554 F.3d 1010, 1022 (Fed. Cir. 2009) ("Indefiniteness, as a subset of claim construction, is a question of law which this court reviews without deference."); *Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1347 (Fed. Cir. 2005), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120 (2014).

The Supreme Court has long held that claims that purport to cover a product or apparatus by using purely functional claim language are invalid for indefiniteness. *See Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938); *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942). Congress created an exception to this rule in 1952 when it enacted 35 U.S.C. § 112 ¶ 6 (now codified at § 112(f)), which allows a patentee to state a claim element broadly as a "means" for performing a specified function without specifying the structure in the claim itself. *See* 35 U.S.C. § 112(f) (A claim element "may be expressed as a means … for performing a specified function without the recital of structure . . and such claim shall be construed to cover the corresponding structure … described in the specification ….").

"In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.,* 753 F.3d 1375, 1378 (Fed. Cir. 2014); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1328 (Fed. Cir. 2012) ("[S]ection 112, paragraph 6 incorporates a deliberate *quid pro quo*."). When the function recited in the claim is performed by a microprocessor, the specification must identify not only the physical structure, but also an algorithm in the specification for performing that function. *Triton Tech of Texas,* 753 F.3d at 1378. The law therefore "restricts computer-implemented means-plus-function terms to the algorithm disclosed in the specification." *Harris*

*Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005). If the specification does not disclose such an algorithm, the claim is invalid for indefiniteness. *See, e.g., Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008); *see also, e.g., Robert Bosch, LLC v. Snap-On Inc.*, --- F.3d ----, 2014 WL 5137569, at *7 (Fed. Cir. Oct. 14, 2014) ("If there is no structure in the specification corresponding to the means-plus-function limitation in the claims, the claim will be found invalid as indefinite." (citation omitted)).[5]

In making the indefiniteness determination, the district court must focus on the *actual* disclosures in the written description. A patentee cannot cure the lack of disclosure, for example, through expert testimony that one of ordinary skill in the art would have been able to come up with an appropriate structure to perform the function. *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function."); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012); *Noah Sys. Inc., v. Intuit Inc.,* 675 F.3d 1302, 1312 (Fed. Cir. 2012).

> **B.** **"Means For Allocating Classification Information" and "Means … To Allocate the Classification Information" Are Indisputably Means-Plus-Function Limitations.**

Claim 1 of the '295 patent recites a "<u>means</u>" for performing a particular function, *i.e.,* "<u>allocating classification information prescribed by a user</u> …." (Case No. 14-cv-00142, D.I. 1-1,

---

[5] Computer-implemented means-plus-function claim elements commonly fail to disclose an algorithm for performing the claimed function. *See, e.g., Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014); *Function Media, LLC v. Google, Inc.*, 708 F. 3d 1310, 1319 (Fed. Cir. 2013); *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1382 (Fed. Cir. 2013); *Noah Sys., Inc.*, 675 at 1312; *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F. 3d 1361, 1365 (Fed. Cir. 2012); *Net MoneyIN, Inc.*, 545 F.3d at 1367; *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333-34 (Fed. Cir. 2008); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008).

col. 8:59-60 (emphasis added).)   Here, as discussed above, TLI and the PTAB agreed that "means for allocating classification information" is a means-plus-function term.

The same analysis applies to the similar term "means … to allocate the classification information to the corresponding digital still image data," which appears in claim 25.  Claim 25 covers similar subject matter as claim 1, but takes the form of an apparatus claim and recites additional limitations related to the requirement that the classification information be audio information, which are not relevant to this motion.  (*Compare* Case No. 14-cv-00142, D.I. 1-1, col. 8:52-9:13 *with id.* at col. 10:47-12:7.)   Claim language like this, which includes the word "means" and recites a function, is presumptively in means-plus-function format.  *Net MoneyIN,* 545 F.3d at 1366.

### C.     The Specification Does Not Disclose Sufficient Structure for Performing the Function of the "Allocating Classification Information" Means.

The patentee used functional language to claim the "allocation" of "classification information" to digital images.  Despite the patentee's reliance on this feature as a point of novelty, the '295 patent fails to disclose a structure capable of "allocating classification information."   Therefore, under the same reasoning the PTAB employed to find claim 1 indefinite, claims 1 and 25 and their dependents are likewise indefinite and therefore invalid.[6]

---

[6] Although the PTAB generally applies a different standard for claim construction than district courts, in concluding that claim 1 was indefinite, the PTAB applied the same "not amenable to construction" standard that a district court applies.  (*See* D.I. 47-1 at 13 (citing *In re Aoyama*, 656 F.3d 1293, 1298 (Fed. Cir. 2011)); *see also In re Donaldson Co.,* 16 F.3d 1189, 1193 (Fed. Cir. 1994) (*en banc*) ("Accordingly, because no distinction is made in [Section 112] paragraph six between prosecution in the PTO and enforcement in the courts … we hold that paragraph six applies regardless of the context in which the interpretation of means-plus-function language arises, *i.e.*, whether as part of a patentability determination in the PTO or as part of a validity or infringement determination in a court.").

The only disclosure regarding the claimed "means for allocating classification information" is a box in Figure 2 and a few lines of accompanying text.  Figure 2, excerpted below, depicts a "telephone unit" to be used in the claimed communication system.



The telephone unit of Figure 2 includes "classification information allocator," "MZ," but this "black box" disclosure is insufficient to describe a corresponding structure for the means-plus-function terms.  The specification describes the "MZ" merely by using the same language as the claim: "a means MZ is provided … for allocating the classification information OM which are prescribed by the user to the digital images …."  (Case No. 14-cv-00142, D.I. 1-1, col. 6:42-45.)   As the PTAB recently concluded in reviewing these claims, this language does not "describe *how* the classification information is allocated to the digital image."  (Case No. 14-md-2534, D.I. 47-1 at 11 (emphasis in original).)  The Federal Circuit has held that similarly vacuous descriptions of the purported structure, which provide "nothing more than a restatement of the function, as recited in the claim," fail to provide sufficient structure to avoid indefiniteness. *Finisar Corp..*, 523 F.3d at 1340; *see also ePlus, Inc*., 700 F.3d at 518 (finding that "black box"

labeled "Purchase Orders" did not disclose sufficient structure for performing a "generate purchase orders" function); *Blackboard, Inc.*, 574 F.3d at 1383 ("The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed.").

The specification contains no description of the "MZ" box that indicates *how* to carry out the claimed function, let alone setting forth an algorithm for performing the function as required by Federal Circuit law.  The specification states that the "allocation means MZ may be integrated into the keypad TA" of the telephone unit (Case No. 14-cv-00142, D.I. 1-1, col. 6:46-47), but as the PTAB observed, this sparse description of "use of a keypad or speech recognition unit by a user to ***prescribe*** classification information" does not provide the requisite structure or algorithm for "***allocating*** classification information."  (Case No. 14-md-2534, D.I. 47-1 at 12 (emphasis added).)

Because the specification discloses no structure or algorithm that may carry out the claimed function, there is no requisite boundary to "cabin the scope of the functional language" in claim 1.  *ePlus, Inc.*, 700 F. 3d at 519.  Claims 1 and 25 are therefore invalid as indefinite.

**D.     Because Claims 1 and 25 Are Invalid as Indefinite, Their Dependent Claims 2-16 and 26 Are Likewise Invalid as Indefinite.**

Because dependent claims 2-16 and 26 depend from claims 1 and 25, respectively, they incorporate the same defective limitation and are therefore are also indefinite.  *See Datamize, LLC,* 417 F.3d at 1356 (affirming invalidity of all dependent claims upon concluding that the independent claim, from which those claims depended, was indefinite).

**V.     THE '295 PATENT METHOD CLAIMS ARE INVALID FOR LACK OF PATENTABLE SUBJECT MATTER**

*Alice* compels invalidation of the asserted claims pursuant to Section 101.  The '295 patent purports to claim an abstract idea for organizing digital images, *i.e.*, storing digital images based on "classification information."  Nothing in the claims adds any inventive concept to this

abstract idea: at most, the claims add conventional computer elements such as a "telephone unit" and "server" that the patentee concedes and the PTAB confirmed were known in the prior art. Thus, while contributing nothing to digital image or telecommunications technologies, the patent seeks to monopolize a basic process for ***organizing*** pictures sent from a phone to a server. The asserted claims are therefore invalid for lack of patentable subject matter.

### A.   Legal Standard for Invalidity for Lack of Patentable Subject Matter Under 35 U.S.C. § 101

Like indefiniteness, the validity of the asserted claims under 35 U.S.C. § 101, which defines patentable subject matter, is a question of law. *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law that we review de novo."); *see also Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014).

Further, a court can and often should rule on the issue of patentability before completing formal claim construction proceedings to "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc*., 576 F.App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring) (noting the "clear advantages to addressing section 101's requirements at the outset of litigation" including obviating the need for "lengthy claim construction"); *Genetic Techs. Ltd. v. Lab. Corp. of AmericaHoldings*, Case No. 12-cv-1736-LPS-CJB, 2014 WL 4379587, at *6 (D. Del. Sept. 3, 2014) (quoting Judge Mayer's concurrence and recommending dismissal for lack of patentable subject matter); *Eclipse IP LLC v. McKinley Equip. Corp.*, Case No. 14-cv-154-GW-AJWX, 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014) (same); *see also Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under [Section] 101").

Following the Supreme Court's recent decision in *Alice*, many district courts have ruled on Section 101 invalidity without performing claim construction. *See, e.g., Cogent Med., Inc. v. John Wiley & Sons, Inc.*, Case No. 5:13-cv-4486-RMW, slip. op. (N.D. Cal. Sept. 30, 2014); *McRO, Inc. v. Activision Publishing, Inc.*, Case No. 2:14-cv-33-GW-FFM, 2014 WL 4759953 (C.D. Cal. Sept. 22, 2014); *DietGoal Innovations LLC v. Bravo Media, LLC*, No. 13-cv-8391-PAE, 2014 U.S. Dist. LEXIS 92484 (S.D.N.Y. July 8, 2014); *see also Compression Tech. Solutions LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 WL 2368039, at *3 (N.D. Cal. May 29, 2013), *aff'd*, 557 F.App'x 1001 (Fed. Cir. Mar 10, 2014) (accepting patentee's claim constructions for purposes of deciding patentability).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor …." 35 U.S.C. § 101. The Supreme Court has long held, however, that "[l]aws of nature, natural phenomena, and abstract ideas" are not patentable subject matter under Section 101. *Alice*, 134 S. Ct. at 2354 (internal quotation omitted). These limitations on patentability exist to prevent "monopolization" of "the basic tools of scientific and technological work" that "might tend to impede innovation … thereby thwarting the primary objective of the patent laws." *Id.* (internal citations omitted).

A two-part test governs the patentability of claims covering an "abstract idea." First, the Court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. If so, the Court proceeds in the second step to "search for an inventive concept – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotation marks and brackets omitted). These "additional elements" must be "more

than simply stating the abstract idea while adding the words 'apply it.'"  *Id.* at 2357 (quotation marks and brackets omitted).  Moreover, "well-understood, routine, conventional activity" or technology – including general-purpose computers – does not provide an "inventive concept." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012).  "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility."  *Alice*, 134 S. Ct. at 2358 (citation, quotation marks, ellipses and brackets omitted).

### B.   Claim 17 Covers an Abstract Idea for Organizing Stored Digital Images.

As the Supreme Court held in *Alice*, a court must first determine whether the claims "are directed to a patent-ineligible concept," *i.e.*, an "abstract idea."  *Alice*, 134 S. Ct. at 2355. Although abstract ideas have long been exempt from patent protection, *see*, *e.g.*, *Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852), "given the ubiquity of computers," this rule has become especially important for patents involving computerized automation of routine processes.  *See Alice*, 134 S. Ct. at 2358.  An example of a patent-ineligible abstract idea is the claimed "method of organizing human activity" invalidated in *Bilski*.  *See Alice*, 134 S. Ct. at 2356 (describing *Bilski*, 561 U.S. at 599).

Anyone who had ever kept a photo album or scrapbook the old-fashioned way, with photos developed from photographic film, would readily recognize the process described in claim 17 of the '295 patent.  After picking up an envelope of printed photos, for example, one might sort through and classify them by subject matter – annotating some as "summer vacation photos" and others as "holiday photos" – and then store the different categories in separate parts of the photo album.  The '295 patent purports to cover this routine and abstract idea of archiving photos based on user-specified classifications, instead of simply storing the photos in a disorganized fashion.  (Case No. 14-cv-00142, D.I. 1-1, col. 2:32-34 ("The order features, or

classification information, characterize the digital images and are taken into consideration as the images are stored.").)   The digital image storage claimed in the '295 patent, in fact, is more abstract than the alleged inventions in other recent cases holding claims invalid under Section 101.

For example, in *Digitech,* 758 F.3d at 1348, the patentee claimed a method of generating a "device profile" that included data collected about a digital photo image, including "measured chromatic stimuli," "spatial stimuli," and "device response characteristic functions."   *Id.* at 1350-51.   The Federal Circuit found the claim invalid as attempting to cover an abstract idea.   *Id.* at 1351.   The court reasoned that the patent "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."   *Id.* at 1340.

The organization of information in *Digitech* was far more complex than the method claimed here; the method in *Digitech* involved collecting specific data about chromatic and spatial information within the image itself to permit the camera to correct those distortions in the final image.   Nonetheless, it was unpatentable under *Alice* because the process of organizing information using mathematics was an abstract idea not confined to a specific structure or device.   Similarly here, the process of organizing information using user-prescribed classification information is an abstract idea not confined to any specific structure or device.

Nor is *Digitech* an isolated decision.   In *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, the Federal Circuit invalidated a claim covering a method of transmitting data transactions from a telephone.   558 F.App'x 988 (Fed. Cir. 2014).   The information transmitted from the telephone included "transaction information" that the system used to determine where to send particular portions of the transmitted data.   *Id.* at 990.   In affirming invalidity under

Section 101, the Federal Circuit ruled that "the well-known concept of categorical data storage, *i.e.*, the idea of **collecting information in classified form**, then separating **and transmitting that information according to its classification**, is an abstract idea that is not patent-eligible." *Id.* at 992 (emphasis added); *see also Enfish, LLC v. Microsoft Corp.*, No. 12-cv-07360-MRP-MRW, slip op. at 12 (C.D. Cal. Nov. 3, 2014) (Invaliding under Section 101 claims "addressed to the abstract purpose of storing, organizing, and retrieving memory in a logical table.").

The district court in *Wolf v. Capstone Photography, Inc.* invalidated claims similar to TLI's that involve "taking photographs of at least one participant of a sporting event," "associating identifying data with each photograph," and "cataloging [ ] photographs in a web-site server according to identifying data." No. 2:13-cv-09573-CAS-PJW, slip. op. at 2 (C.D. Cal. Oct. 28, 2014). Users could then search for and access the photographs on a website based on the "identifying data." *Id.* The district court found that the claims are "directed to the abstract idea of **providing event photographs organized by participant, as applied using the internet**." *Id.* at 17 (emphasis added); *see also id.* at 20 ("[T]he independent claims do nothing more than recite a series of conventional steps carried out using basic camera and computer functions and mostly essential to placing searchable event photographs online for inspection and ordering.").

These decisions are consistent with the Supreme Court's decisions in *Bilski* and *Alice*. In *Bilski*, the Supreme Court affirmed the rejection of claims directed to "the basic concept of hedging," "a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class." 130 S. Ct. at 3231 (internal citations omitted). Most recently, in *Alice*, the Supreme Court rejected claims "drawn to the concept of intermediated settlement," which is also "long prevalent" and "a building block of the modern economy." 134 S. Ct. at 2356 (quoting *Bilski*, 130 S. Ct. at 3231).

As noted above, the idea for organizing stored images in claim 17 is like the abstract ideas found unpatentable in *Digitech, Cyberfone* and *Wolf,* and even more generic than the concepts of intermediated settlement and hedging rejected in *Alice* and *Bilski*.  Claim 17 seeks to claim storing digital images taken using a telephone unit (*e.g*., a camera phone) on a server (*i.e.*, a storage device) based on classification information provided by a user.  This purported invention amounts to no more than a generic idea of image storage organization, a basic concept that a patentee cannot monopolize.  *See Bilski*, 130 S. Ct. at 3231 (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"); *Dealertrack,* 674 F.3d at 1333) (No one "is entitled to wholly preempt the clearinghouse concept.").  Indeed, as Judge Brinkema observed, "[a] claim directed to a 'method of organizing human activity' seems presumptively patent ineligible."  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 10-cv-00910-LBM-TRJ, slip op. at 10 (E.D. Va. Oct. 24, 2014) (citing *Alice*, 134 S. Ct. at 2536).

C.      **Claim 17 Does Not Contain an "Inventive Concept" Sufficient To Transform an Abstract Idea for Organization Into a Patent-Eligible Invention.**

Because claim 17 covers an abstract idea for organizing stored pictures, the claims are invalid unless they contain an "inventive concept" sufficient to transform the abstract idea into a patentable invention.  *See Alice*, 134 S. Ct. at 2357.  As detailed below, however, the claims fail to present any "inventive concept" that supports patentability.

1.      **Claim 17 Recites Mere Application of the Abstract Idea Using Known, Generic Components.**

The abstract idea of claim 17 is implemented through two physical components, a "telephone unit" for transmitting digital images and classification and a "server" for storing the digital images.  The '295 patent does not purport to improve upon any aspect of these

components – to the contrary, the patentee in the specification conceded that telephone units and servers were known in the prior art and thus not an inventive concept.

These components, which are well-known in the prior art and are described only "at a high level of generality" (*see supra* at pp. 4-7), do not render the claim any less abstract. *Alice*, 134 S. Ct. at 2357 ("'Simply appending conventional steps, specified at a high level of generality,' was not 'enough' to supply an 'inventive concept.'" (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294)); *accord McRO, Inc.*, 2014 WL 4759953, at *11. The "telephone unit" and "server" merely provide a "technological environment" to ***apply*** the abstract idea. *See Bilski*, 561 U.S. at 610-11 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'" (quoting *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981))); *Wolf*, slip. op. at 18 ("[M]oving the selection and ordering of event photographs onto a computer server cannot transform this practice into a patentable invention."). "No special technology or programming is mentioned or envisioned in the claims" or described in the specification. *See Open Text S.A. v. Alfresco Software Ltd*, 13-CV-04843-JD, 2014 WL 4684429, at *2 (N.D. Cal. Sept. 19, 2014). These generic components therefore "add[ ] nothing of significance to the claimed abstract idea." *See Cyberfone*, 588 F.App'x at 993. ("The 'telephone' recited in claim 1 is not a specific machine, and adds nothing of significance to the claimed abstract idea."); *Wolf*, slip op. at 21 ("web-site server" and "digital camera" limitations found to be "generic technological categories" that do not support patentability").

The claimed configuration of these two generic components also adds nothing to support patentability. *See Alice*, 134 S. Ct. at 2359 ("[C]onsidered as an 'ordered combination,' the computer components … 'ad[d] nothing … that is not already present when the steps are

considered separately.'" (quoting *Mayo*, 132 S. Ct. at 1298)).   Use of a telephone and server to capture, transmit, and store digital images was "routine, conventional activity" that was "previously used in the field."  *See Mayo*, 132 S. Ct. at 1298; *McRO*, 2014 WL 4759953 at *9.

As detailed above, the specification of the '295 patent admits that the prior art practiced all steps of the claimed method other than the ***idea*** for organizing images based on classification information.  (*See* Case No. 14-cv-00142, D.I. 1-1, cols. 1:27-42 (describing prior art methods of recording, storing, and transmitting digital images), 1:52-59 (describing a prior art device for receiving data on a PC server), 7:45-51 (describing a prior art "parser" for extracting classification information)).  None these steps constitutes an "inventive concept."  *See Alice*, 134 S. Ct. at 2355.

The final method step, storing images "taking into consideration the classification information," embodies an abstract idea and thus cannot be the "inventive concept" that transforms the nature of the claim.  *See Alice*, 134 S. Ct. at 2355 (describing the "inventive concept" as "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly ***more than a patent upon the ineligible concept itself***" (emphasis added)).   *Id.*   In all events, this is a "conventional and quotidian task[ ]" that "[a] person can perform [ ] without the aid of any particular or structured method and without the need of any technology."  *See DietGoal*, 2014 U.S. Dist. LEXIS 92484 at *32.  As noted at the outset, anyone who had ever kept a photo album or scrapbook the old-fashioned way, with photo film developed onto paper, has followed this very same process.  Creating a photo album based on classifications, instead of simply letting the envelopes of developed film pile up in a drawer, "stor[es] the images in a manner so that they are easily retrieved," as the '295 patent describes. (Case No. 14-cv-00142, D.I. 1-1, col. 8:44-45.)   One can also use the exact same mental

"classification" process with transmission of photos taken from one person, Jane, to another person, Bob, who is responsible for long-term storage of the images.

This idea for organizing photos is unchanged when applied to digital images. Instead of using physical prints and albums, Bob can manually store digital images on a computer based on classification information using generic functions of a general-purpose computer including, for example, the ability to store the images in different directories depending on whether the images were classified as summer or spring vacation. Nor does automating a process that a person, Bob, can perform manually confer patentability. *See, e.g., Cogent Medicine,* slip. op. at 8 (rejecting claims that sought to cover "no more than computer automation of what 'can be performed in the human mind'" (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011))); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM slip. op. (M.D. Fla. Sept. 11, 2014) (holding a method and system of automated saving unpatentable because it was merely "a computerized application of a technique known from antiquity").

### 2.    The Dependent Claims Fail To Supply an "Inventive Concept."

The asserted dependent claim limitations also do not provide any transformative inventive concept. *See McRO*, 2014 WL 4759953, at *12; *Planet Bingo LLC v. VKGS LLC*, 576 F.App'x 1005, 1007 (Fed. Cir. 2014) ("[T]here is no meaningful distinction … between the independent and dependent claims.").

### a.    Use of audio data as classification information (claims 18-20)

Claims 18-20 concern the use of "speech" or "audio data" (*i.e.* "speech spoken into the telephone unit," "audio data") as classification information that is associated with the digital images. (Case No. 14-cv-00142, D.I. 1-1, col. 10:18-26.) These features do not save these claims from the prohibition against patenting abstract ideas. Specifying a particular type of

classification information narrows the claim, but does not provide "new technology" or "improve the functioning of" any of the generic computer elements recited in claim 17.[7]  *See Wolf,* slip. op. at 20-21 (quoting *Alice*, 134 S. Ct. 2359) (dependent claim limitations requiring particular types of "identifying data" for photographs did not support patentability); *Amdocs (Israel)*, slip. op. at 9 ("The preempted area does not need to be broad.").  The particular type of classification information that these dependent claims require is merely a "field of use" for the abstract idea, which does not confer patentability.  *See Bilski*, 130 S. Ct. at 3231 ("[L]imiting an abstract idea to one field of use … d[oes] not make the concept patentable.").

> **b.      Use of time, telephone number, text, or storage location as classification information (claims 21-24)**

Claims 21-24 similarly recite particular types of classification information:  "time information" (claim 21), "telephone number" (claim 22), "location information in memory" for image storage (claim 23), and "digital character information" (claim 24).  As explained above, a narrower application of an abstract idea is still an abstract idea, and these dependent claims recite features of a generic implementation using computers and telephone devices.  The prior art taught use of time, telephone number, or location as "classification information."  (*See* Case No. 14-md-2534, D.I. 47-1 at 15 (describing "pict fax file 15" of Witek), 16 (describing the "log file" of Witek, which contains "classification information" such as "time and date of receipt," "the sender of the fax, phone numbers, addresses, and any other information which could be regarded as useful") (internal citations omitted)).  The patentee did not contend any differently.  (*See id.*)

Thus, the dependent claims 18-24 of the '295 patent are also invalid under Section 101.

---

[7] The specification does not provide any novel way to recognize or store speech, and discloses prior art capable of storing and transmitting compressed audio data.  (*See, e.g.,* Case No. 14-cv-00142,  D.I. 1-1, col. 1:36-42.)

### D.      The System and Apparatus Claims Are Likewise Unpatentable.

As detailed in Section III, the system and apparatus claims of the '295 patent are invalid for indefiniteness.  In addition, the system and apparatus claims lack patentable subject matter because they merely link "'the use of the [method] to a particular technological environment,' that is, implementation via computers."  *See Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (quoting *Bilski* 130 S. Ct. at 3230); *see also DietGoal*, 2014 LEXIS 92484, at *44 ("[T]he system claims recite nothing more than 'a handful of generic computer components configured to implement the same [abstract] idea' as the patent-ineligible method claims." (quoting *Alice* 134 S. Ct. at 2351)).  Although written in system or apparatus form, these claims recite the same "telephone unit" and "server," generic components that do not transform the claims into eligible subject matter.  *See Alice*, 134 S. Ct. at 2351 (rejecting both method and system claims, noting that patentability should not "depend simply on the draftsman's art" (internal citation and quotations omitted)).

### VI.    TLI'S INADEQUATELY PLED JOINT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

Defendants submit that the claims of the '295 patent are invalid, and therefore the Court need not analyze the sufficiency of the allegations in Plaintiff's multiple complaints.  If, however, the Court were to disagree and allow any claims to survive at this time, a review of TLI's complaints shows that their infringement claims—including joint infringement as well as the various other infringement allegations discussed in the following sections—are irreparably deficient and should be dismissed.  Each method claim of the '295 patent contains steps to be performed on a telephone unit and steps to be performed on a server.  (*See* Case No. 14-cv-00142, D.I. 1-1, claims 17–24.)  For example, the claims require "recording images using a digital pick up unit in a telephone unit" and "storing the digital images in the server." (*Id.* at

claim 17.)  As TLI acknowledges in its Complaints, these steps generally require the actions of separate entities.  (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 23 (alleging that the accused products allow "***telephone users*** to easily characterize and upload digital images," after which "***Google*** stores and archives the digital images uploaded to its servers" (emphasis added)).)[8]

That poses a problem for TLI.  As the Supreme Court recently reiterated, if "the performance of all the patent's steps is not attributable to any one person," then "there has simply been no infringement of the method." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014).  TLI attempts to sidestep the issue by invoking the theory of joint infringement.  (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶¶ 33, 47.)  Joint infringement—a potential exception to the rule that direct infringement requires a single, direct infringer—holds that a defendant may be liable for direct infringement if the defendant performs some of the method steps ***and*** is vicariously liable for another's performance of the remaining steps.[9]  *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286–87 (Fed. Cir. 2011); *see also Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Direct infringement requires a party to perform or use each and every step or element of a claimed method or product.").  TLI similarly attempts to plug the holes in its claim of direct infringement

---

[8]  TLI's complaints against particular Defendants are used merely as an illustration in this section.  The arguments apply equally to the complaints filed by TLI against the other Defendants in this consolidated action.

[9]  The Supreme Court in *Limelight* declined to address the viability of joint infringement as a basis for direct infringement liability, remanding for the Federal Circuit to address that issue in the first instance.  *Limelight*, 134 S. Ct. at 2120.  The pending remanded case was argued before the Federal Circuit on September 11, 2014.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, No. 09-1372 (Fed. Cir.).

of the system and apparatus claims through resort to joint infringement.  (*See, e.g.*, Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶¶ 27, 42.)[10]

TLI's Complaints, however, do not allege facts sufficient to satisfy the stringent requirements of joint infringement.  For joint infringement liability to exist, a defendant must exercise "control or direction" over the performance of each limitation of the claim, including those that the defendant does not itself perform.  *Muniauction*, 532 F.3d at 1329–30; *see also Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013).  Thus, to plead joint infringement, a complaint must set forth facts from which the Court may infer that one party exercises "control or direction" over the entire process such that "every step is attributable to the controlling party, i.e., the 'mastermind.'"  *See Muniauction*, 532 F.3d at 1329; *W.L. Gore & Assocs. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 570 (E.D. Va. 2012).[11]

In an effort to attribute to the defendants TLI calls the "Platform Defendants"[12] the performance or practice of each of the various steps or elements of the asserted claims, including

---

[10] These claims, like the method claims, recite a telephone unit and a server that stores digital images taken by the telephone unit. (*See, e.g.*, D.I. 1-1, claims 1 and 25.)  Also as with the method claims, TLI acknowledges in its Complaints that using these systems generally requires the actions of separate entities.  (*See, e.g.*, Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 26 (alleging that Apple customers "use the aforementioned digital image uploading platforms to upload images from mobile devices having telephones onto Apple servers")).

[11] There is some uncertainty whether establishing joint infringement may require an even stricter showing, namely, the existence of a formal agency relationship or the equivalent.  *See, e.g.*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1319 (Fed. Cir. 2010), *reh'g en banc granted, opinion vacated sub nom, Akamai Techs., Inc. v. MIT*, 419 F. Appx 989 (Fed. Cir. 2011); *see also Akamai*, 692 F.3d 1301,1349-50 (Fed. Cir. 2012) (Linn, J., dissenting).  That issue may be addressed by the Federal Circuit in the pending remanded *Akamai* case. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, No. 09-1372 (Fed. Cir.). At this point, however, this Court need not decide the question, as TLI's Complaint fails under either standard.

[12] As referenced herein, the "Platform Defendants" include:  Dropbox, Inc.; IAC/Interactive Corp.; CityGrid Media LLC; Vimeo LLC; Imgur LLC; Photobucket.com Inc.; Shutterfly Inc.; Smugmug Inc.; Snapchat Inc.; Tripadvisor Inc.; Tripadvisor LLC; WHI Inc. dba We Heart It; Yelp Inc.; Apple Inc.; Yahoo! Inc.; Tumblr, Inc.; Twitter, Inc.; Vine Labs, Inc.; Google, Inc.; Pinterest, Inc.; Facebook, Inc.; Instagram, LLC; Capital One Financial Corporation; Capital One, N.A.; and Capital One Services, LLC.

those performed by users of the Platform Defendants' products, TLI alleges that each Platform Defendant "directs and/or controls the practicing of all claim steps." (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶¶ 32, 33; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶¶ 27, 28.) In support of these assertions, TLI makes a number of allegations, none of which, if true, would support a theory of joint infringement.

First, TLI alleges that the Platform Defendants "enter[] into contracts with its [respective] users," by which it apparently means the standard terms and conditions applicable to all users of Defendants' products. (*E.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 32; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 28.) But TLI provides no facts regarding the acts that the contracts allegedly require users to perform – and certainly no allegations that the contracts require users to perform any claim limitation at issue here. (*See, e.g.*, *id.*) *see also Centillion*, 631 F.3d at 1287 (noting that for joint infringement, "an agency relationship or other contractual obligation *to perform the steps* must exist" (emphasis added)); *W.L. Gore & Assocs.*, 874 F. Supp. 2d at 570 (same). And of course, the notion that any of the Platform Defendants contractually require their users to take pictures—a required step of the claimed method—is implausible.

Second, TLI states that the Platform Defendants "instruct[] its [respective] users how to upload digital images from mobile devices having telephones." (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 33; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 28.) However, instructing users how to use an accused system does not amount to control or direction for purposes of joint infringement. *See Muniauction*, 532 F.3d at 1330 ("That Thomson controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement.").

Third, TLI alleges that the Platform Defendants themselves perform several acts "automatically."  (*E.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 33; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 28.)  Each alleged "automatic" act involves either transmission to or storage on *the server*.  *Id.*  These allegations do not involve the steps, such as the recording of images, which must be performed by a user of the *telephone unit*.  Thus, these alleged "automatic" acts do not help TLI with its underlying problem – namely, that the claimed methods' steps require the actions of separate entities.

In short, TLI's assertions fall far short of alleging facts from which this Court may infer that an individual user's personal decision whether to take pictures, store them, and upload them from his or her camera phone to a server is directed or controlled by – and thus attributable to – any Defendant.  *W.L. Gore & Assoc.*, 874 F. Supp. 2d at 570.  Indeed, the Federal Circuit has held as a matter of law that a defendant who merely provides software and technical assistance to a customer is *not* vicariously liable for the actions of its customers, because "it is entirely the decision of the customer whether to install *and operate* this software."  *Centillion*, 631 F.3d at 1287 (emphasis added); *see also Tecsec, Inc. v. Int'l Bus. Machs. Corp.*, 769 F. Supp. 2d 997, 1012 (E.D. Va. 2011).  Thus TLI's Complaints fail to state a claim for joint infringement through the actions of users of the Platform Defendants' accused products.

This defect is incurable.  There is no basis for TLI to allege that the Platform Defendants direct or control users' operation of their own telephone units, *e.g.*,, that the Platform Defendants somehow compel their users to take photos and prescribe "classification information" to those photos.  Defendants, therefore, respectfully ask this Court to dismiss TLI's claims of joint infringement with prejudice.

## VII.    TLI'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

Under 35 U.S.C. § 271(b) or (c), a party may be liable for indirect infringement either by contributing to such infringement or by inducing another to directly infringe a patent.  *See generally Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067–68 (2011).  TLI, however, does not adequately plead the required elements of either form of indirect infringement.  Moreover, with respect to its allegations of indirect infringement of the '295 patent's *method* claims, TLI fails to plead—and cannot plausibly plead—the predicate act of direct infringement required under the Supreme Court's recent decision in *Limelight*.

### A.    TLI Does Not Plead Specific Intent to Induce Infringement.

Pleading induced infringement under Section 271(b) requires a plausible allegation that the alleged inducer "possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix*, 581 F.3d at 1328 (emphasis added).  TLI's Complaints do not plead facts to support the requisite specific intent to infringe any of the asserted claims.  *See, e.g.*, Apple Compl. ¶¶ 33-37; Google Compl. ¶¶ 38-43.

TLI's allegations of specific intent are threadbare.  For example, TLI fails to identify any particular products when alleging specific intent.  *See, e.g.*, *id.*  TLI similarly does not allege with any specificity *how* any Platform Defendant purportedly induces any user to directly infringe the asserted claims.  *See, e.g.*, *id.*; *see also Silver State Intellectual Techs., Inc. v. Foursquare Labs, Inc.*, No. 12-CV-1308, 2013 WL 5437363, at *4 (D. Nev. Sept. 26, 2013); *Unisone Strategic IP, Inc. v. Life Techs.*, No. 13-CV-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) ("Plaintiff must allege more than just an intent to cause the acts that produce direct infringement."); *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1198 (S.D. Cal. 2013) (dismissing complaint where "[t]he Court cannot plausibly infer from the allegation that Defendants sold or used 'certain machine tools' that Defendants specifically

intended third party infringement").   For example, TLI's inducement allegations lack any plausible assertion of Platform Defendants' specific intent for users to prescribe classification information – a required element of each asserted claim.  (*See, e.g.*, D.I. 1-1, claims 1, 17, 25.)

These pleading problems are compounded because TLI's Complaints do not allege adequately that Defendants' products lack substantial non-infringing uses.  *See, e.g.*, Apple Compl. ¶ 39; Google Comp. ¶ 44.   This failure makes any inference of intent to induce infringement even less plausible.  When a product has substantial non-infringing uses, the mere fact that people use that product with a defendant's knowledge is insufficient to establish the required intent to infringe.  *See Vita-Mix*, 581 F.3d at 1329 ("Especially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." (quoting *Warner-Lambert Co. v. Apotex. Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003))).

There is no plausible basis in the Complaints from which to infer that a Platform Defendant encouraged users of any accused product to use the product in a way that such Platform Defendant knew would infringe the '295 patent.  Because TLI's threadbare assertions do not allege that the Platform Defendants have specific intent to infringe, they do not state a claim for induced infringement of the '295 patent.  See *Iqbal*, 556 U.S. at 678.  TLI's induced infringement claims should be dismissed pursuant to Rule 12(b)(6).

**B.      TLI Fails To Plead Contributory Infringement Because It Does Not Allege There Are No Substantial Non-infringing Uses of the Accused Products.**

To state a claim for contributory infringement, a plaintiff must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*681 F.3d 1323, 1337 (Fed. Cir. 2012).   TLI's allegations fall short of this requirement because they do not contain facts

indicating that the Platform Defendants' accused products have no substantial non-infringing uses.  TLI merely states in conclusory fashion that the Platform Defendants know that their components are "a material part of the inventions of the '295 patent"; are "especially made or adapted to infringe the '295 patent"; are "not staple articles or commodities of commerce suitable for substantial non-infringing use"; and that, as a result, Platform Defendants' accused products "ha[ve] no substantial non-infringing use."  *E.g.*, Apple Compl. ¶ 39; Google Compl. ¶ 44.  These statements amount to no more than a parroting back of the applicable legal standard, an approach insufficient to avoid dismissal.  *See Unisone*, 2013 WL 5729487, at *4 (finding that Plaintiff failed to allege contributory infringement because "Plaintiff merely recites the statutory language of § 271(c) but does not allege any facts regarding which component of Defendant's SCMS software is made or adapted for use in an infringement"); *Seoul Laser*, 957 F. Supp. 2d at 1198 (dismissing contributory infringement claim where Plaintiff "merely identified a broad category of accused devices and labeled them infringing"); *Smartwater, Ltd. v. Applied DNA Scis., Inc.*, No. 12-CV-5731, 2013 WL 5440599, at *11 (E.D.N.Y. Sept. 27, 2013) ("Other than reciting that there are no substantial non-infringing uses, however, Plaintiff offers virtually no factual support.  This is insufficient.").  TLI's claims of contributory infringement of the asserted claims should therefore be dismissed.

### C.      TLI Fails To Plead Indirect Infringement of the Method Claims Because It Does Not Allege a Single Direct Infringer.

In addition to the pleading deficiencies with *all* of TLI's indirect infringement claims identified above, there is an additional, fatal, infirmity that plagues TLI's assertions of indirect infringement of the '295 patent's *method* claims by the Platform Defendants, namely, the absence of even an arguable theory of underlying *direct* infringement of those claims.  Although TLI asserts that the Platform Defendants indirectly infringe the method claims of the '295 patent

(*see, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶¶ 36–45; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶¶ 31–40), the law is crystal clear that there is no indirect infringement without a direct infringer.  *Limelight*, 134 S. Ct. at 2117 ("[L]iability for inducement must be predicated on direct infringement."); *see also id.* n.3 (finding "no basis to distinguish for these purposes" between contributory infringement and inducement of infringement); *Grecia v. Vudu, Inc.*, No. C-14-1220 EMC, 2014 WL 4348294, at *4 (N.D. Cal. Aug. 29, 2014) (applying *Limelight* to dismiss indirect infringement claims under Rule 12(b)(6)); *TSI (USA) Inc. v. Creative Compounds, LLC*, No. 1:14-CV-0017 CEJ, 2014 WL 5419579, at *3 (E.D. Mo. Oct. 22, 2014) (same).  Nor may a defendant's own alleged direct infringement support an allegation of indirect infringement.  *See, e.g.*, *Optigen, LLC v. Int'l Genetics, Inc.*, 777 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) (dismissing a claim of inducement against a defendant where the only direct infringement plausibly alleged in the complaint was that of the same defendant).  Rather, indirect infringement involves a plausible allegation that the defendant induces or contributes to the direct infringement *of another*.  *See, e.g.*, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part) (explaining that "inducement requires evidence of culpable conduct, directed to encouraging *another's* infringement" (emphasis added)); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Thus, to assert adequately a claim of indirect infringement against Defendants, TLI must (among other things) plead facts sufficient to allege that an entity *other than* a particular Platform Defendant is liable for directly infringing those claims.  TLI's Complaints fail to meet this requirement.

The only potential infringers identified in TLI's Complaints are users of the Platform Defendants' products.  Thus, the only potential basis for a claim of indirect infringement is for contributing to or inducing alleged infringement by users of the Platform Defendants' products.

The problem for Plaintiff is that the Complaints do not – and cannot – allege that such users directly infringe the method claims of the '295 patent, which would require an allegation that the users themselves performed every step of the claimed methods.  That allegation is absent from the Complaints because the '295 patent's claims clearly require users to perform certain steps using a "telephone unit" and another entity to perform other steps on a "server."  (*See* Case No. 14-cv-00142, D.I. 1-1, claims 17–24; *see also id.*, claims 1 and 25 (reciting, *inter alia*, a "telephone unit" and "server")).  TLI acknowledges, as it must, that the accused "servers" are not controlled by users of telephone units.  (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 23 (alleging that "*Google* stores and archives the digital images uploaded to its servers" (emphasis added)); *id.* ¶¶ 26, 28 (alleging that the local defendants upload images from their telephone units "to *Google's* databases," where the "images are archived and stored" *by Google*) (emphasis added)); *id.* ¶¶ 55, 65 (alleging that the local defendants "upload[] digital images from mobile devices onto Google servers," after which *Google's servers* "archive those images"); (Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 26 (alleging that digital images are uploaded "onto Apple servers (or onto servers operated on or for Apple's behalf")); *id.* (alleging that Apple "maintain[s] Apple servers that categorize and store images that were uploaded via mobile devices having telephones"); *id.* at ¶¶ 27-28 (alleging that Apple "automatically archive[es] the digital images that it uploads onto its servers").)  With no allegation that users perform the server-based steps of the claimed methods, there is no allegation of direct infringement of the method claims by those users, and thus no basis for a claim that the Platform Defendants contribute to or induce that infringement.

Because TLI's allegations of indirect infringement of the method claims are incurably flawed, Defendants respectfully request that they be dismissed with prejudice.

**D.** **TLI's Indirect Infringement Claims Should Be Dismissed to the Extent They Are Based on Pre-Suit Knowledge.**

"[B]oth forms of indirect infringement—contributory infringement and inducement of infringement—require the putative infringer to know 'of the existence of the patent that is infringed.'" *Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 881 (E.D. Va. 2013); *see also Global-Tech Appliances,* 131 S. Ct. at 2068 (2011) ("[W]e proceed on the premise that § 271(c) requires knowledge of the existence of the patent that is infringed."); *Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d 1317, 1328 (Fed. Cir. 2009) (A claim for inducement "requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.").   To the extent TLI wants to assert a claim for any alleged *pre-suit* indirect infringement, TLI must plead facts "that would support a plausible inference that defendants had pre-suit knowledge of the patents in issue." *Rembrandt*, 950 F. Supp. 2d at 884.  TLI has not done so here.

TLI alleges that Defendants have "been aware of the '295 patent since *at least* November 20, 2013, when [each] was served with a complaint in an action filed on November 18, 2013." (*E.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 37 (emphasis added); Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 32 (same).)  But TLI's Complaints allege no facts to support a plausible inference that any Defendant had knowledge of the '295 patent *before* TLI filed these complaints.  Accordingly, even if TLI's indirect infringement claims are otherwise adequately alleged (and they are not, as explained above), to the extent that TLI's indirect infringement claims are based on knowledge of the '295 patent *prior* to the filing of its complaints in Delaware, they should be dismissed.  *See Rembrandt*, 950 F. Supp. 2d at 883 (dismissing claims

for indirect infringement based upon pre-suit knowledge where no facts were alleged that warranted a plausible inference of pre-suit knowledge).

## VIII.   TLI'S ADDITIONAL DEFICIENT CLAIMS SHOULD BE DISMISSED

### A.   TLI's Claims of Direct Infringement of the System and Apparatus Claims by the Platform Defendants Should be Dismissed.

#### 1.   TLI Cannot Sustain Claims Against the Platform Defendants For Providing Only Two of the Three Main Required System Components.

TLI alleges that the Platform Defendants directly infringe claim 1 of the '295 patent, which requires:

1. A communication system for recording and administering digital images, comprising:

*at least one telephone unit* including:  a telephone portion for making telephone call, a digital pick up unit for recording images, a memory for storing digital images recorded by the digital image pick up unit, means for allocating classification information prescribed by a user of said at least one telephone unit to characterize digital images obtained by said digital pick up unit, a processor for processing the digital images recorded by the digital image pick up unit;

*a server* including the following components: a receiving unit for receiving data sent from said at least one telephone unit, an analysis unit for analyzing the data received by the receiving unit from the telephone unit, the data including classification information to characterize the digital images, a memory in which at least the digital images are archived, the archiving taken into consideration the classifying information; and

*a transmission system coupled to said at least one telephone unit and to the said server to provide for transmission of data from said at least one telephone unit and to the said server*, the data including at least the digital images recorded by the digital image pick up unit and classification information.

(Case No. 14-cv-00142, D.I. 1-1, claim 1 (emphasis added)).

Thus, asserted claim 1 explicitly requires three broad components that, combined, form the claimed "communication system":  "at least one telephone unit," "a server," and "a

transmission system coupled to said at least one telephone unit and to the said server."[13]   In contrast to claim 1's explicit requirements, however, TLI alleges that each Platform Defendant provides at most only two of the three required system components, the "telephone unit" and the "server," and is silent regarding the "transmission system."  For example, TLI alleges that:

> Specifically, Apple's direct infringement includes, without limitation (i) its uploading of digital images from mobile devices having telephones onto Apple servers (or onto servers operated on or for Apple's behalf ("Apple servers")), (ii) its testing of its Apple products by uploading images from mobile devices having telephones onto Apple servers within the United States, and (iii) its maintaining Apple servers that categorize and store images that were uploaded via mobile devices having telephones.

(Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 26.)[14]

Elsewhere in the Complaints, TLI fails to identify any of Defendants' accused products as the claimed "transmission system."  *Id.* ¶¶ 18-21.  Furthermore, TLI does not allege that any Platform Defendant supplies or controls any claimed "transmission system."[15]   *See, e.g.*, *Rembrandt*, 950 F. Supp. 2d at 885 (An infringer uses a system by "placing into use ***each element*** of the claimed system." (citing *Centillion*, 631 F.3d at 1288) (emphasis added)).  Because TLI has failed to identify any product supplied or controlled by a Platform Defendant

---

[13] Independent claim 25 likewise recites a "telephone unit," "server," and "transmission system."  (Case No. 14-cv-00142, D.I. 1-1, claim 25.)  Method claim 17 similarly requires performing the steps of, *inter alia*, "recording images … in a telephone unit," "transmitting data … to a server …," and "receiving the data by the server …."  (*Id.* at claim 17.)

[14] For those Platform Defendants not accused of providing a telephone unit (who are Dropbox, Inc.; IAC/Interactive Corp.; CityGrid Media LLC; Vimeo LLC; Imgur LLC; Photobucket.com Inc.; Shutterfly Inc.; Smugmug Inc.; Snapchat Inc.; Tripadvisor Inc.; Tripadvisor LLC; WHI Inc. dba We Heart It; Yelp Inc.; Yahoo! Inc.; Tumblr, Inc.; Twitter, Inc.; Vine Labs, Inc.; Pinterest, Inc.; Facebook, Inc.; Instagram, LLC; Capital One Financial Corporation; Capital One, N.A.; and Capital One Services, LLC), the arguments made in this section as to the claimed "transmission system" also apply as to the claimed "telephone unit."

[15] In fact, the claim phrase "transmission system" does not appear anywhere in TLI's Complaint.  TLI is wholly silent as to the infringement of this broad element both as to what structure is accused and which party might be responsible for that accused structure.

corresponding to the claimed "transmission system," TLI's direct infringement allegations against the Platform Defendants should be dismissed pursuant to Rule 12(b)(6).

  **2.**  **TLI Cannot Sustain Claims Against the Platform Defendants for Putting the Claimed Systems "Into Service" by Providing Users with Mobile Phones and/or Software.**

TLI alleges that some Platform Defendants "provide[] mobile telephones, websites, platforms and pre-loaded software *to mobile telephone users* that provide and enable image uploading, thereby putting the invention into service." (*E.g.*, Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 27 (emphasis added), Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 32 (same)). TLI similarly alleges that other Platform Defendants "provide websites, platforms and pre-loaded software to mobile telephone users that provide and enable image uploading, thereby putting the invention into service." (Case No. 14-cv-00142, D.I. 1, Facebook Compl. ¶ 47.) As before, TLI wholly ignores the claim 1 requirement for "a transmission system" and TLI's allegations should be dismissed on that basis alone. *See, e.g.*, *Rembrandt*, 950 F. Supp. 2d at 885.

Furthermore, TLI alleges that providing software that may (or may not) be used by third party end users to record, store, and transmit images is "use" *by* Platform Defendants of those elements of the claimed system. (*See, e.g.,* Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 27.) But TLI's third-party end-user theory of infringement has been squarely rejected by the Federal Circuit. As discussed above, to establish direct infringement of a patent claim, the plaintiff must demonstrate that *a single party* is responsible for the alleged infringement of the claim. *See, e.g.*, *BMC Res.,* 498 F.3d at 1378 ("Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."); *Centillion*, 631 F.3d at 1284 (same for system claims). In the context of a system claim (such as claim 1), TLI must establish that a single Defendant controls the entire accused system. *See Centillion*, 631 F.3d at 1284 ("We hold

that to 'use' a system for purposes of infringement, a party must put the invention into service, i.e. control the system as a whole and obtain benefit from it."); *see also Rembrandt*, 950 F. Supp. 2d at 884.

In *Centillion*, Defendant Qwest's allegedly infringing system included two parts: (1) Qwest's back office systems, and (2) front-end data processing applications provided by Qwest for its customers to install on their personal computers.  631 F.3d at 1281.  The Federal Circuit "agree[d] with Qwest that, as a matter of law, it does not 'use' the patented invention." *Id.* at 1286.  The Court explained that "[w]hile Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means."  *Id.*  The Federal Circuit has thus made clear that merely "[s]upplying the software for the customer to use is not the same as using the system."  *Id.*

Under *Centillion*, therefore, TLI's allegation that the Platform Defendants "use" the claimed system, for example, by "provid[ing] mobile telephones, websites, platforms and pre-loaded software to mobile telephone users," or "put[ ] the invention into service" by "provid[ing] websites, platforms and pre-loaded software to mobile telephone users that provide and enable image uploading" is legally inadequate.  (*See, e.g.*, Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 27; Case No. 14-cv-00142, D.I. 1, Facebook Compl. ¶ 47.)  The Platform Defendants' provision of software to their users, whether through mobile telephones, websites, or other "platforms," is not materially different than Qwest's provision of front-end data processing applications to its users in *Centillion*.  As in *Centillion*, where that provision did not constitute "use" because merely supplying the applications was not "using the system," 631 F.3d at 1286, Defendants' provision of software to their users cannot, as a matter of law, constitute Defendants' "use" of any alleged infringing system.  *See also Tecsec,* 769 F. Supp. 2d at 1012.

Additionally, this Court's decision in *Rembrandt* underscores the deficiencies in TLI's Complaints.  As this Court explained, "*Centillion* teaches that an infringer may use a system (i) by causing the system to perform the whole process and obtaining a benefit, or (ii) by placing into use each element of the claimed system."  950 F. Supp. 2d at 885.  This Court found that the Rembrandt complaint adequately alleged that the accused system "place[d] into use all three elements of the claim[ed] system" by providing detailed factual allegations explaining how the accused system put into use each claimed element.  *Id.* at 886.  In addition, this Court found that the Rembrandt complaint provided substantial factual support such that "the defendants, ***not the consumers or customers***, [were] alleged to have, themselves, placed into use each element of the claim[ed] system."  *Id.* (emphasis added).

Here, unlike in *Rembrandt*, TLI's Complaints do not plead facts to support any Defendant's "use" of the claimed system by "putting the invention into service."  TLI's vague allegations, as quoted above, do not reference any particular software offered by a Defendant or explain how any (let alone each) particular element of the system operates.  They certainly do not establish that any Platform Defendant – as opposed to its "consumers or customers" (*e.g.*, the alleged "mobile telephone users," Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 27) – placed into use each element of the claimed system.  *Cf. Rembrandt*, 950 F. Supp. 2d at 886.  Accordingly, TLI's claims that the Platform Defendants are directly liable for others' "use" of the claimed system should be dismissed pursuant to Rule 12(b)(6).

## B.      TLI's Claim Under 35 U.S.C. § 271(f) Should Be Dismissed.

TLI's allegations regarding Section 271(f) read in their entirety:

> [Defendant] is liable for infringement under 35 U.S.C. § 271(f) when the end user is outside the United States by supplying its software components for combination outside the United States.

(*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶ 46; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶ 41.)  This conclusory assertion is the only reference in the entire Complaint to this theory of infringement liability.  The Complaints recite no specific facts regarding TLI's Section 271(f) allegations.  TLI does not even specify which provision of § 271(f) allegedly applies to any conduct of the Defendants.  This perfunctory assertion is insufficient to state a claim for infringement under Section 271(f).  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Moreover, to the extent that TLI is alleging liability under Section 271(f) for infringement of one of its asserted method claims, TLI's theory is legally deficient because "Section 271(f) does not apply to method patents."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009) (*en banc* in relevant part); *see also Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) ("[M]ethod patents do not have physical components that could be combined outside the United States as prohibited by § 271(f).").  Therefore, any claim by TLI that Defendants are liable for infringing asserted method claims 17–24 of the '295 patent is legally unfounded, and these claims should be dismissed.  *See id.*

### C.      TLI's Request for Enhanced Damages Should Be Dismissed

TLI's Complaints include a prayer for enhanced damages.  (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. at 20, ¶ G; Case No. 14-cv-00136, D.I. 1, Apple Compl. at 16, ¶ F.)  TLI has no basis for claiming enhanced damages pursuant to 35 U.S.C. § 284 because it does not allege that any purported infringement by Defendants has been willful.  "It is well-settled 'that enhancement of damages must be premised on willful infringement.'"  *Rembrandt*, 950 F. Supp. 2d at 883 (quoting *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991)).  TLI's Complaints do not claim nor plead factual allegations

in support of a claim for willful infringement.  (*See, e.g.*, Case No. 14-cv-00139, D.I. 1, Google Compl. ¶¶ 29–50; Case No. 14-cv-00136, D.I. 1, Apple Compl. ¶¶ 25–45.)  Without a claim for willful infringement, TLI's requests for enhanced damages are without a legal basis and should be dismissed.  *See Beatrice*, 923 F.2d at 1578–79.

## IX.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss TLI's Complaint because the system and apparatus claims 1–16 and 25–26 of the '295 patent are invalid as indefinite under 35 U.S.C. § 112 and that all claims of the '295 patent, including method claims 17–24, are invalid under 35 U.S.C. § 101 for lack of patentable subject matter.

To the extent the Court declines to rule that all claims are invalid, Defendants request that the Court grant Defendants' Motion to Dismiss as to (i) Plaintiff's claims of joint direct infringement of claims 1–26 of the '295 patent; (ii) Plaintiff's claims of direct infringement of claims 17-24 against the User Defendants; (iii) Plaintiff's claims of indirect infringement of claims 1–26 of the '295 patent, including such claims based on pre-suit knowledge of the '295 patent; (iv) the bulk of Plaintiff's claims of direct infringement against the Platform Defendants, including such claims under 35 U.S.C. § 271(f); and (v) Plaintiff's request for enhanced damages.

Dated:  November 5, 2014

Respectfully submitted,

By:   _/s/ Phillip E. Morton_

Phillip E. Morton (VSB No. 71299)
Laura J. Cunningham (VSB No. 78411)
Cooley LLP
11951 Freedom Drive
Reston, VA  20190
Telephone:  703-456-8000
Facsimile:  703-456-8100
pmorton@cooley.com
lcunningham@cooley.com

Heidi Keefe (Admitted *pro hac vice* )
Mark Weinstein (Admitted *pro hac vice*)
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 857-0663
hkeefe@cooley.com
mweinstein@cooley.com
***Counsel for Defendants Facebook, Inc. and
Instagram, LLC***

Dated: November 5, 2014                    By:  */s/ Stephen E. Noona*

                                          Stephen E. Noona (VSB No. 25367)
                                          Kaufman & Canoles, P.C.
                                          150 W. Main Street, Suite 2100
                                          Norfolk, VA 23510-1665
                                          Tel: (757) 624-3239
                                          Fax: (757) 624-3169
                                          senoona@kaufcan.com

                                          Kevin Hardy (pro hac vice)
                                          Samuel Bryant Davidoff (pro hac vice)
                                          Andrew V. Trask (pro hac vice)
                                          Bryant Hall (pro hac vice)
                                          Williams & Connolly LLP
                                          725 Twelfth Street, N.W.
                                          Washington, DC 20005
                                          Tel: (202) 434-5000
                                          Fax: (202) 434-5029
                                          khardy@wc.com
                                          sdavidoff@wc.com
                                          atrask@wc.com
                                          bhall@wc.com
                                          **Counsel for Defendant Google Inc.**

Dated: November 5, 2014                    By:   */s/ Robert A. Angle*

                                          Robert A. Angle (VSB 37691)
                                          TROUTMAN SANDERS LLP
                                          Troutman Sanders Bldg
                                          1001 Haxall Point
                                          Richmond, VA 23219
                                          Telephone:  804-697-1200
                                          robert.angle@troutmansanders.com

                                          Jane Michaels (admitted *pro hac vice*)
                                          Benjamin N. Simler (admitted *pro hac vice*)
                                          HOLLAND & HART LLP
                                          555 17TH STREET, SUITE 3200
                                          DENVER, CO 80202
                                          TELEPHONE:  (303) 295-8000
                                          jmichaels@hollandhart.com
                                          bnsimler@hollandhart.com
                                          **Counsel for Defendant Photobucket.com, Inc.**

Dated: November 5, 2014                    By: */s/ Eleanor Tennyson*

Karen Jacobs (Delaware State Bar No. 2881)
Eleanor Tennyson (Delaware State Bar No. 5812)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
kjacobs@mnat.com
etennyson@mnat.com

OF COUNSEL:
Jerry R. Selinger
PATTERSON AND SHERIDAN LLP
1700 Pacific Avenue
Suite 2650
Dallas, TX  75201
Telephone: (214) 720-2200
Facsimile: (713) 623-4846
jselinger@pattersonsheridan.com
***Counsel for Defendant Smugmug, Inc.***

Dated: November 5, 2014                    By:  */s/ Joshua B. Brady*

Joshua B. Brady (VSB No. 72757)
8300 Greensboro Drive, Suite 1100
Tysons Corner, VA  22102
Telephone:  703-760-5249
Facsimile:   703-748-0244
jbrady@williamsmullen.com

Craig L. Mytelka (VSB No. 31652)
Martin W. Hayes (VSB No. 82204)
Williams Mullen, P.C.
222 Central Park Avenue, Suite 1700
Virginia Beach, VA 23462
Telephone: (757) 499-8800
Facsimile: (757) 473-0395
cmytelka@williamsmullen.com
mhayes@williamsmullen.com
***Counsel for Defendants AV Automotive, L.L.C., Hall
Automotive, LLC, Max Media, LLC***

Dated: November 5, 2014                    By:    /s/ Craig C. Riley

Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-5355
E-Mail:  craig.reilly@ccreillylaw.com
*Counsel for Defendant For A Song, Inc.*


Dated:  November 5, 2014                    By: */s/ Ahmed J. Davis*

Ahmed J. Davis (VSB No. 43982)
Ruffin B. Cordell (VSB No. 35449)
Lauren A. Degnan (pro hac vice)
Ahmed J. Davis (VSB No. 43982)
Cherylyn E. Mizzo (pro hac vice)
Daniel R. Gopenko (VSB No. 83932)
J. Wesley Samples (pro hac vice)
Fish & Richardson P.C.
1425 K Street, NW, 11th Floor
Washington, DC 20005
Tel:  (202) 783-5070
Fax:  (202) 783-2331
E-mail:  davis@fr.com
E-mail:  cordell@fr.com
E-mail:  degnan@fr.com
E-mail:  mizzo@fr.com
E-mail:  gopenko@fr.com
E-mail:  samples@fr.com

*Counsel for Defendant Apple Inc.*

48

Dated:  November 5, 2014

By:___*/s/ Robert A. Angle/*_____

Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com

Mary C. Zinsner, VSB #31397
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone:  703-734-4334
Facsimile:  703-448-6514
Email:  mary.zinsner@troutmansanders.com

OF COUNSEL:
Ryan Kent, Esq.
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666
Fax: (415) 236-6300
RKent@durietangri.com

*Counsel for Dropbox, Inc.; IAC/Interactive Corp.;*
*CityGrid Media LLC; Vimeo LLC; Imgur LLC;*
*Shutterfly Inc.; Snapchat Inc.; Tripadvisor Inc.;*
*Tripadvisor LLC; WHI Inc. dba We Heart It; Yelp*
*Inc.; Yahoo! Inc.; Tumblr, Inc.; Twitter, Inc.; Vine*
*Labs; and Pinterest, Inc.*

Dated: November 5, 2014

By:    */s/ Robert A. Angle/*

Robert A. Angle (VSB No. 37691)
Megan C. Rahman (VSB No. 42678)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
robert.angle@troutmansanders.com
megan.rahman@troutmansanders.com

Mary C. Zinsner, VSB #31397
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone:  703-734-4334
Facsimile:  703-448-6514
Email:  mary.zinsner@troutmansanders.com

***Counsel for Capital One Financial Corporation;
Capital One, N.A.; and Capital One Services, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of November, 2014, I will electronically file the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Philip J. Harvey
FISKE & HARVEY
100 N. Pitt Street, Suite 206
Alexandria, VA 22314
Telephone: (703) 518-9910
Facsimile: (703) 518-9931
Email:  pharvey@harveybinnall.com

John Isaac Post
Law Offices of Phillip J. Harvey
717 King Street, Suite 306
Alexandria, VA  22314
Tel:  (571) 527-1431
Fax:  (703) 647-6257
*Counsel for Plaintiff*
Email:  *ipost@harveybinnall.com*
*Counsel for Plaintiff*

Robert Whitman
Mark S. Raskin
Charles Wizenfeld
Eric Berger
**Mishcon de Reya New York LLP**
750 Seventh Avenue, 26th Floor
New York, NY  10019
Email:  charles.wizenfeld@mishcon.com
Email:  eric.berger@mishcon.com

*Counsel for Plaintiff*

Craig C. Reilly
Law Office of Craig C. Reilly
111 Oronoco St.
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-2604
Email:  craig.reilly@ccreillylaw.com

*Counsel for Defendant For A Song, Inc.*

Joshua B. Brady
Martin W. Hayes
Williams Mullen
8300 Greensboro Drive
Suite 1100
McClean, VA 22130
Telephone: (703) 760-5200
Facsimile: (703) 748-0244
Email:  jbrady@williamsmullen.com
Email:  rthompson@williamsmullen.com
Email:  mczajkowski@williammullen.com

*Counsel for Defendants AV Automotive, LLC,*
*Hall Automotive, LLC, Max Media LLC,*

Robert Armisted Angle
Troutman Sanders LLP
Troutman Sanders Bldg.
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23219
Tel:  (804) 697-1246
Fax:    (804) 697-1339
Email:  robert.angle@troutmansanders.com

*Counsel for Capital One*
Jane Michaels
Benjamin Simler
Holland & Hart LLP
555 Seventeeth Street
Suite 3200
Denver, CO  80202
Tel:     (303) 295-8162
Email: jmichaels@hollandhart.com
Email: bnsimler@hollandhart.com

*Counsel for Photobucket*

Stephen Noona
Kaufman & Canoles, PC
150 W. Main Street, Suite 2100
Norfolk, VA  23510-1665
Tel:     (757) 624-3239
Fax:     (757) 624-3169
Email:  senoona@kaufcan.com

*Counsel for Google Inc*

Robert Armisted Angle
Troutman Sanders LLP
Troutman Sanders Bldg.
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23219
Tel:  (804) 697-1246

Email:  robert.angle@troutmansanders.com
*Counsel for Photobucket.*

Raymond Kennon Poteat, III
Andew Trask
Williams & Connolly LLP
725 12th St. NW
Washington, DC  20005
Tel: (202) 434-5699
Email:  GoogleTLIService@wc.com
Email:  senoona@kaufcan.com

*Counsel for Google Inc.*

Ahmed Jamal Davis
Daniel Gopenko
Ruffin Cordell
Fish & Richardson PC
1425 K St. NW, Suite 1100
Washington, DC  20005
Tel: (202) 626-6379
Email:  Apple-TLI_EDVa_Service_List@fr.com

*Counsel for Apple Inc.*

Daralyn Durie
Ryan Kent
Durie Tangri
217 Leidesdorff St.
San Francisco, CA  94111
Tel:     (415) 362-6666
Fax:     (415) 231-6300
Email:  Service-TLI@Durietangri.com


*Counsel for Dropbox Inc.,*
*IAC/InterActiveCorp., CityGrid Media LLC,.*
*Vimeo LLC, Imgur, LLC, Shutterfly Inc.,*
*TripAdvisor Inc., TripAdvisor LLC, Snapchat*
*Inc., WHI Inc., Yelp Inc.; Yahoo! Inc., Tumblr,*
*Inc., Twitter, Inc., Pinterest, Inc.*

Jerry Selinger
Patterson Sheridan LLP
1700 Pacific Avenue
Suite 2650
Dallas, TX  75201

Tel:  (214) 272-0957
Fax: (214) 720-200
Email:  jselinger@pattersonsheridan.com

*Counsel for Smugmug*

           */s/ Phillip E. Morton*
_____

        Phillip E. Morton (VA Bar No. 71299)
        Cooley LLP
        11951 Freedom Drive
        Reston, VA 20171
        Telephone:  703-456-8000
        Facsimile:  703-456-8100
        Email:  pmorton@cooley.com

        Attorneys for Defendants
        Facebook, Inc. and Instagram, LLC